**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KIM POSEY, INDIVIDUALLY AND ON** | § | |
| **BEHALF OF THE ESTATE OF** | § | |
| **BRYAN POSEY, DECEASED AND** | § | |
| **MICHAEL POSEY, INDIVIDUALLY,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:04-CV-1685-L** |
| | § | |
| **SOUTHWESTERN BELL TELEPHONE** | § | |
| **L.P. A/K/A SOUTHWESTERN BELL** | § | |
| **TELEPHONE COMPANY AND** | § | |
| **DALLAS COUNTY, TEXAS,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are the Motion for Summary Judgment of Defendant Dallas County, Texas, filed March 31, 2005; and Defendant Southwestern Bell Telephone, L.P.'s Motion for Summary Judgment, filed July 22, 2005. After careful consideration of the motions, responses, replies, briefs, appendices, competent summary judgment evidence, record, and applicable law, the court **grants** the Motion for Summary Judgment of Defendant Dallas County, Texas as to its federal claims; **declines** to exercise supplemental jurisdiction over the state law claims against Defendant Dallas County, Texas; and **remands** these state law claims to County Court at Law Number 3, Dallas County, Texas. As Defendant Southwestern Bell Telephone, L.P.'s Motion for Summary Judgment only addresses Plaintiffs' state law claims, the court **declines** to rule on such motion and also **remands** such claims to County Court at Law Number 3, Dallas County, Texas.

## I.   <u>Factual and Procedural Background</u>

Plaintiffs Kim and Michael Posey ("Plaintiffs") are the parents of Bryan Posey ("Posey"), deceased.  On December 9, 2002, Posey was arrested by Dallas police officers on charges of Assault/Family Violence and booked into the Dallas County Jail at approximately 2:30 a.m.  Upon admission to the jail, Posey was screened by Dallas County Sheriff's Department detention personnel.  The parties dispute whether Posey was properly screened for suicide detection and prevention pursuant to the Sheriff Department's policy.[1]  According to Dallas County ("the County"), Posey was asked all of the questions on the mental disability/suicide intake screening form.[2]  County jail personnel state that Posey informed them that he was not suicidal and that he

---

[1]Plaintiffs provided a DVD copy of the  book-in tape.  Plaintiffs' App. at 22.  The court found the audio of the DVD mostly unintelligible.  The court, however, did review a transcript of the audio portion of the DVD.  *Id*. at 23-33.

[2]The Dallas County Mental Disability/Suicide Intake Screening form includes the following questions:

. . .

C.  Suicide Related Questions/Observations

11.   (a)   Have you ever attempted suicide?
(b)   Have you ever had thoughts about killing yourself?
If yes, when?
Why?
How?

12.   Are you thinking about killing yourself today?

13.   (a)   Have you ever been so down that you couldn't do anything
for more than a week?
(b)   Do you feel this way now?

14.   When not on drugs or drinking, have you ever gone for days
without sleep or had a long period in your life when you felt very
energetic or excited?

15.   Have you experienced a recent loss or death of family member or
friend or are you worried about major problems other than your

had never tried to commit suicide.  According to Plaintiffs, Posey was only asked whether he had ever received mental health services and whether he was taking antidepressants; and he replied in the negative to both questions.   Posey was referred to a jail nurse for a medical evaluation.  The nurse states that she also assessed his psychological condition.  Although the jail nurse found no evidence that Posey displayed any signs or symptoms of suicidal behavior, she indicated on his medical record that his behavior should be observed and that he should see a psychiatrist for his anger problems.

Following the evaluation by the jail nurse, Posey was placed in a holdover cell.  He had access to a free telephone to call his family or an attorney.  The inmate telephone service was provided by Southwestern Bell Telephone, L.P. ("SWBT").  While in the holdover cell, Posey made at least one telephone call to his mother from the telephone inside the cell.  After receiving a complaint regarding the telephone call(s) from Posey's mother, detention personnel moved Posey to a single cell which did not have a working telephone.[3]  The telephone in the cell had a broken handset and exposed wiring.  Sometime between  3:30 and 3:49 a.m.,[4] detention personnel found Posey on the floor of his cell with a telephone cord wrapped around his neck.  A jail nurse was summoned immediately and began administering CPR to Posey.  An ambulance was also called and arrived at the jail at approximately 3:59 a.m.  Posey was transported to Parkland Hospital where he

---

> legal situation?
>
> 16.    Does the individual seem extremely sad, apathetic, helpless, or hopeless?

The County's App. at 51.

[3]The parties dispute the time Posey was placed in the single cell, and whether  jail personnel checked on him at any time prior to their discovering him on the floor of the cell.

[4]The parties also dispute the time Posey was discovered on the floor of the jail cell.

**Memorandum Opinion and Order- Page 3**

was pronounced dead by the hospital medical staff at approximately 4:23 a.m.   An autopsy determined that Posey died as a result of hanging, and the manner of his death was ruled a suicide.

Plaintiffs filed this lawsuit against SWBT and the County (collectively "Defendants") on June 6, 2003, in County Court at Law Number 3, Dallas County, Texas.  Defendants removed the case to federal court on August 3, 2004.  Plaintiffs allege claims of negligence, breach of implied warranty, breach of express warranties, strict liability, and misrepresentation against SWBT. Plaintiffs also allege negligence and deprivation of Posey's constitutional rights "in violation" of 42 U.S.C. § 1983 against the County.[5]  Plaintiffs contend that SWBT failed to use ordinary care; failed to notify the County of the inherent and obvious danger of using corded telephones in jail facilities; and failed to repair or replace such corded telephones.  Plaintiffs further contend that SWBT and the County entered into a joint enterprise to provide telephone services to the public and County Jail inmates; and that as a member of the joint enterprise, SWBT owed Plaintiffs and Posey a common law legal duty to protect Posey from harm.

Plaintiffs contend that the County was negligent in maintaining and using corded telephones in the cells; in leaving a defective and non-operable corded telephone in a cell; and in failing to properly assess Posey's physical, emotional and psychological condition at the time of book-in. Plaintiffs further contend that the County acted with deliberate indifference to Posey's risk of harm or self-inflicted harm.  Plaintiffs also maintain that the County deprived Posey of his freedom of expression; freedom from unlawful arrest and seizure; freedom from the use of excessive force; freedom from deprivation of liberty and life without due process of law; freedom from cruel and

---

[5]Plaintiffs incorrectly allege a *violation* of 42 U.S.C. § 1983.  No entity, official or government employee ever *violates* § 1983.  Section 1983 provides no substantive rights; it serves only as a vehicle for bringing suit for *violations* of the Constitution or other laws of the United States. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).

**Memorandum Opinion and Order- Page 4**

unusual punishment or summary punishment; freedom from unequal protection under the laws; and denial of adequate medical care.

The County filed its motion for summary judgment on March 31, 2005. The County contends that: (1) Plaintiffs fail to establish deliberate indifference by County officials as to the serious medical or psychiatric needs of Posey; (2) Plaintiffs fail to establish a County policy of deliberate indifference to the serious medical or psychiatric needs of Posey; (3) Plaintiffs fail to establish a violation of other constitutional or federally secured rights of Posey; and (4) Plaintiffs' negligence claims under state law should be remanded to state court or, alternatively, dismissed with prejudice.

SWBT filed its motion for summary judgment on July 22, 2005, contending that: (1) Plaintiffs' claims are barred in their entirety because suicide is an affirmative defense to a civil action for personal injury or death; (2) Plaintiffs fail to prove that SWBT was negligent; (3) Plaintiffs fail to prove the existence of a joint enterprise or any negligent act occurring in furtherance thereof; (4) Plaintiffs' causes of action for breach of warranty fail as a matter of law; (5) Plaintiffs' claim of strict liability is specious, as there is no evidence that the inmate telephone was defective or unreasonably dangerous; (6) Plaintiffs' claim of misrepresentation fails as a matter of law because SWBT did not make any representations regarding the telephones as alleged by the Plaintiffs, and there is no evidence that Posey acted in reliance on any representation; (7) Plaintiffs are not entitled to punitive damages for wrongful death, as recovery of punitive damages is limited to the surviving spouse of the decedent or the heirs of his body; (8) Plaintiffs cannot recover damages for Posey's pain and suffering, as there is no evidence that Posey was conscious of pain and suffering prior to

his death; and (9) the Estate of Bryan Posey cannot recover for lost future wage earnings, as a decedent's estate has no cause of action in Texas for lost future earnings.

## II.   **Summary Judgment Standard**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *Ragas,* 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent

summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

## III.  Analysis

### A.  Plaintiffs' Federal Claims

Plaintiffs contend that Dallas County deprived Posey of his constitutional rights guaranteed by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and "acted with deliberate indifference to [Posey] in that there was an obvious serious risk of harm or self-inflicted harm[.]" Petition at 12. Plaintiffs maintain that the County had actual knowledge of the risk, "but acted with willful blindness to the elevated risk, and failed to take obvious steps to address this known and serious risk." *Id.*

In its motion for summary judgment, the County contends that Plaintiffs fail to establish deliberate indifference of County officials to the serious medical or psychiatric needs of Posey. The

County also asserts that Plaintiffs fail to establish a County policy of deliberate indifference to the serious medical needs and safety of pretrial detainees in its custody.

### 1.        Deliberate Indifference to Substantial Risk of Harm

Plaintiffs allege that Posey was "irrational, under the influence of drugs, and hostile," and this was evidence that he was a suicidal risk.[6]  Response at 21.  Plaintiffs also assert that the County had knowledge of two prior suicides involving inmates hanging themselves with telephone cords.[7] They maintain that despite this knowledge, detention authorities did not properly screen Posey for suicide, and placed him in a cell with a corded telephone.  The County counters that upon admission to the jail, Posey was screened by detention personnel pursuant to the suicide prevention policy.  It also asserts that even if there was a failure on the part of jail personnel to follow established written jail procedures that were in place, which it denies, the summary judgment evidence does not support Plaintiffs' contentions that such failure was deliberate indifference.  The County asserts that there is no evidence that detention personnel were deliberately indifferent to Posey's serious medical or psychiatric needs.  It contends that Posey denied any suicidal intentions or previous attempts to commit suicide.  It asserts that a jail nurse further evaluated Posey's medical and psychological condition.  It further asserts that: (1) there is no evidence that Posey had been to the jail prior to the

---

[6]According to the Dallas Police Department offense report, dated December 30, 2002, Posey "had been doing drugs for the past eight days and was in an irrational state of mind[.]" Plaintiffs' App. at 35.  The police arrest report, dated December 10, 2002, states that Posey had not slept for the past eight days.  *Id.* at 40.  The County points to the dates of these reports as evidence that they were created after Posey's suicide, and therefore, facts regarding Posey's drug use and lack of sleep were not available to the jail personnel prior to Posey's suicide.

[7]County jail records reveal that an inmate was found in a jail cell with a telephone cord wrapped around his neck in October 2000.  Plaintiffs' App. at 15.  In his deposition, Officer Lynn Looka testified that he recalled a suicide with a telephone cord in the County Jail in 1992 or 1993.  *Id.* at 219, Looka Deposition at 146.

**Memorandum Opinion and Order- Page 8**

date of this incident; (2) there is no evidence that Posey had ever been treated for a mental or emotional problem prior to his suicide; and (3) there is no evidence that Posey had previously attempted suicide.

Claims arising from a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care or safety for those in their custody. *See Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (*en banc*). Under this standard, the plaintiff must prove that a jail or detention official "had gained actual knowledge of the substantial risk of suicide and responded with deliberate indifference." *Id.* "Deliberate indifference" in prison cases occurs when "an official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This same standard is also used to measure jail officials' liability as to pretrial detainees. *Hare*, 74 F.3d at 643.

Deliberate indifference requires a higher degree of fault than negligence, or even gross negligence.[8] *Id.* at 645. Negligent inaction by jail personnel does not rise to the level of deliberate indifference. *Id.* "[T]he constitutional standard of conduct must step up from negligence – that [is] it must be more than mere or even gross negligence." *Id.* As the Fifth Circuit further stated:

> To act with deliberate indifference, a state actor must know [ ] of and disregard [ ] an excessive risk to [the victim's] health or safety. The state actor's actual knowledge is critical to the inquiry. A state actor's failure to alleviate a significant risk that he should have

_____

[8]The terms "gross negligence" and "deliberate indifference" are sometimes confused and interchanged; however, "deliberate indifference" is a stricter standard. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (*en banc*). "Gross negligence" is a heightened degree of negligence, whereas "deliberate indifference" is a "lesser form of intent." *Id.* at n.7 (citation omitted).

**Memorandum Opinion and Order- Page 9**

> perceived but did not, while no cause for commendation, does not
> rise to the level of deliberate indifference.

*McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002) (*en banc)* (internal quotation

marks and citations omitted).

   In this case, as Plaintiffs have sued the County only and *not* any individual County employee,

no such employee may be held individually liable.   To establish County liability, Plaintiffs must

demonstrate that the jail personnel "acted with subjective deliberate indifference," *and* that their

actions resulted from a County "policy or custom adopted or maintained with objective deliberate

indifference to [Posey's] constitutional rights." *Olabisiomotosho v. City of Houston*, 185 F.3d 521,

526 (5th Cir. 1999); *see also Hare*, 74 F.3d at 649 n.4.

   Plaintiffs have not demonstrated that the County employees had subjective knowledge of a

substantial risk of serious harm to Posey regarding his medical needs or safety, and were deliberately

indifferent to the risk.   First, Plaintiffs fail to show that jail personnel knew of, but disregarded, an

excessive risk to Posey's health or safety.   Although there was a corded telephone in Posey's cell,

this alone is not a condition that poses a substantial risk of serious harm.   The combination of the

corded telephone with sufficient evidence that Posey was a known risk for suicide could cause this

condition to be met.   Based on the medical and psychological evaluation of Posey by jail personnel,

there was insufficient evidence that he would commit suicide.

   Second, Plaintiffs fail to show that the jail personnel were deliberately indifferent as to

whether Posey was a suicidal risk.   There is no evidence, nor Plaintiffs allege, that Posey had

previously attempted suicide or that the County had knowledge of such an attempt.   Further, nothing

establishes that Posey, in any way, indicated that he was contemplating suicide.   That Posey was

hostile, belligerent and placed in a jail cell with a corded telephone without more is insufficient to

create a genuine issue of material fact as to Plaintiffs' claim of deliberate indifference. Anger, hostility, and belligerence are not uncommon displays of conduct by pretrial detainees or other persons held in custody.

Plaintiffs offer the affidavits and reports of their experts[9] who contend that Posey was not properly screened and should not have been placed in a cell with a corded telephone. Dr. Richard Kiekbusch opines that the County was deliberately indifferent to the "supervisory needs" of Posey, and that this contributed to Posey's death by suicide. Plaintiffs' App. at 104. He maintains that due to the County's failure to train and supervise its jail staff, the staff failed to properly screen Posey; failed to identify him as a suicide risk; and did not place Posey on suicide watch. *Id.* at 104-111. Mr. Lindsay Hayes opines that jail personnel violated the County's policy by not properly screening Posey for suicide. *Id.* at 137. He also maintains that the corded telephone in the holding cell was "inherently dangerous and the proximate cause of Mr. Posey's death on December 9, 2002." *Id*. at 138.

Both experts rely heavily on the action or inaction of jail personnel. They acknowledge that there was a policy, but state that the jail personnel did not adhere to the County's suicide screening policy for dealing with pretrial detainees or inmates who are at risk for suicide. This approach, however, as later discussed by the court, necessarily defeats Plaintiffs' argument that the County was deliberately indifferent because it did not have a policy to address the treatment and care of pretrial detainees or inmates who were at risk for suicide. While the experts use the technical buzzwords and the correct legal jargon in an attempt to create liability, such verbiage alone does not create a genuine issue of material fact. Neither Mr. Hayes nor Dr. Kiekbusch establishes that he has an

---

[9]The County objected to the affidavits and reports of the experts. For the reasons stated in Section C, *infra*, these objections are overruled as moot.

**Memorandum Opinion and Order- Page 11**

appreciation or understanding of the legal definition of the term "deliberate indifference." They use such terms as "deliberate indifference," "inherent dangerousness," "inherently dangerous" and "incredible and quite disturbing" to describe, in a conclusory fashion, the conduct of the County. What the experts describe, however, are negligent acts, or perhaps grossly negligent acts by jail personnel. The opinions, as set forth by Mr. Hayes and Dr. Kiekbusch, are too slender a reed to support a finding of deliberate indifference. The court will not permit the use of descriptive words to elevate the underlying conduct of jail personnel, which constitutes some form of negligence, to a constitutional tort. What an expert opines is irrelevant and quite beside the point if the facts and applicable law do not create liability. The court, not the expert, determines whether the applicable law and facts raise a genuine issue of material fact. Moreover, expert testimony or opinion is ordinarily insufficient to establish deliberate indifference. *See Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000); *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998); *Stokes v. Bullins*, 844 F.2d 269, 275 (5th Cir. 1988). Nothing in the record regarding the experts' opinions convinces the court to depart from this general principle.

As regrettable as the facts are in this case, the court is convinced that the *Hare* standard has not been met. "[T]he episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs." *Hare*, 74 F.3d at 647-48. At best, Plaintiffs have presented some summary judgment evidence of negligence, or even arguably gross negligence; however, neither negligence nor gross negligence can be the basis for a 42 U.S.C. § 1983 action for a violation of substantive due process of one held in custody. *Id.* at 645. Plaintiffs' deliberate indifference

claim under the Fourteenth Amendment, therefore, fails as a matter of law.  As Plaintiffs have failed to show deliberate indifference, or raise a genuine issue of material fact, there is no constitutional violation.  As there is no underlying constitutional violation, the County cannot be liable for any alleged unconstitutional policy or custom regarding pretrial detainees who may be at risk for suicide. *See id.* at 649 n.4; *see also Olabisiomotosho*, 185 F.3d at 526; *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

### 2.      Policy or Custom

Even if one were to assume that Plaintiffs established deliberate indifference on the part of a County employee or official, the court determines that Plaintiffs have failed to show that Posey's death resulted from a County policy or custom adopted or maintained with objective deliberate indifference to Posey's constitutional rights.  *See Hare*, 74 F.3d at 649 n.4.  Accordingly, this is an alternative basis to grant the County's summary judgment motion on Plaintiffs' federal claims.

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right.  *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability.  *Id. See also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979).  Official policy is defined as :

1.      A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [county] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.      A persistent, widespread practice of [county] officials or employees which, although not authorized by officially adopted and promulgated policy, is so

> common and well-settled as to constitute a custom that fairly represents
> [county] policy. Actual or constructive knowledge of such custom must be
> attributable to the governing body of the [county] or to an official to whom
> that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*) (per curiam); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*) (per curiam), *cert. denied*, 472 U.S. 1016 (1985). A plaintiff must identify the policy, connect the policy to the governmental entity itself and show that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985). A plaintiff must establish that the governmental entity through its deliberate conduct "was the moving force behind the injury alleged" and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County v. Brown,* 520 U.S. at 404.

Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official. *Bennett*, 728 F.2d at 769. The official complained of must possess

> [f]inal authority to establish [county] policy with respect to the action ordered. . . .
> The official must also be responsible for establishing final government policy
> respecting such activity before the [county] can be held liable. . . .[W]hether an
> official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-482 (1986). An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee agency or board and *cannot* review the action or decision of the employee, agency, or board. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989).

The policy or custom relied upon to establish liability may include the inaction of official policymakers, but only when such inaction constitutes "deliberate indifference" to the rights of the

**Memorandum Opinion and Order- Page 14**

plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *City of Canton v. Harris,* 489 U.S. 378, 388, 391 (1989).  The failure or inaction "must amount to an intentional choice, not merely an unintentionally negligent oversight."  *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton*, 489 U.S. at 390).

The type and quantum of proof plaintiffs must offer to establish deliberate indifference varies, however, with the type of inaction alleged and with the identity of the wrongdoer.  When the wrongdoer is a policymaking official, a single act will suffice, if deliberate indifference and causation are established. *See, e.g., Pembaur,* 475 U.S. at 481 ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.").  When the challenge relates to a custom of behavior among non-policymaking employees, which may be contrary to official policy, the plaintiff cannot rely on a single instance of unconstitutional conduct, but must demonstrate "at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983."  *Snyder*, 142 F.3d at 798 (quoting *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989) (internal quotations and citations omitted)).  Isolated violations are not persistent, often repeated constant violations that constitute custom or policy.  *Bennett*, 728 F.2d at 768 n.3.  In such "custom" cases, "where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Id.* at  768.

As Plaintiffs' Fourth Amended Original Petition is not a model of pellucid draftsmanship, the court confesses some ignorance as to the specific theory under which Plaintiffs pursue liability.

Accordingly, the court will address the possible theories it believes are raised by the pleadings on which the Plaintiffs can pursue a § 1983 action against the County. In the final analysis, the court determines that Plaintiffs' evidence is insufficient to raise a genuine issue of material fact under any theory.

First, it is clear that there is no evidence in the record that establishes, or raises a genuine issue of material fact, that the County took affirmative steps through an order, policy statement, resolution, or otherwise, that authorized, condoned or encouraged its employees or officials to act with deliberate indifference to the medical needs or safety of pretrial detainees or inmates in the Dallas County Jail. Accordingly, such a theory obviously cannot be a basis for County liability in this case.

To the extent that Plaintiffs rely on the inaction of official policymakers, such theory necessarily fails. Plaintiffs appear to draw support from this theory because of the jail suicide in 1992 or 1993, and that in 2000, which preceded Posey's suicide in December 2002. This theory fails for two reasons: (1) there is simply a dearth of information surrounding the specifics of the two prior suicides, and (2) the lack of a pattern of such incidents. Regarding the two prior suicides, the court simply does not know the circumstances surrounding these individuals' arrests and deaths, whether they were screened for suicide, and the reasonableness of the actions of the jail personnel. With respect to the lack of a pattern, while the court fully acknowledges the seriousness of the two prior suicides, it cannot say that two prior suicides over a ten-year period constitute "a pattern of similar incidents" necessary to establish official policy for County liability. While there is no bright line as to the number of similar incidents required to establish a pattern over a particular time frame,

the court is convinced that two incidents in the ten-year span prior to Posey's death are insufficient to establish the frequent or widespread occurrences requisite for County liability under § 1983.

Insofar as Plaintiffs seek to hold the County liable for a custom of inaction by failing to correct "the known risk[s] of inherent danger[s] of corded phones," they must present evidence that actual or constructive knowledge of this custom was attributable to the County or to an official with policymaking authority. Nothing in the record indicates that the County or a policymaking official was aware of the known risks of inherent dangers of corded telephones and acted with deliberate indifference. There is evidence that Edgar McMillan, the chief deputy, knew about the potential risk corded telephones posed to pretrial detainees; however, the sheriff, not the chief deputy, is vested with authority by state law as "the keeper of the county jail," and is responsible for the "supervision and control over the jail." Tex. Loc. Gov't Code Ann. § 351.041 (Vernon 2005). Further, the sheriff also serves as administrator of the county jail, unless he files a written statement with the commissioner's court of the county declining to act as administrator. *Id.* § 351.034(a)-(b).[10] Sheriff Bowles was the person vested with final policymaking authority, not Chief Deputy McMillan.

Plaintiffs have produced no evidence to establish that Posey was injured as a result of a policy or custom of the County. The summary judgment record establishes that, at the time of

---

[10]There is nothing in the record that indicates that Jim Bowles, who was sheriff at the time of Posey's death, declined to serve as jail administrator. Bowles testified in deposition that the "policy for the operation of the jail was in the responsibility area of the chief of the jail[,]" McMillan; however, he also stated that he appointed the chief jailer. Plaintiffs' Supp. App. at 0005, Bowles Deposition at 36. He also testified that "the sheriff is responsible, under the law, for the function of his deputies. His deputies have no authority except through their deputation." *Id.* at 0007, Bowles Deposition at 58. He further clarified that McMillan was responsible "to see that the proper attention to an inmate coming into the jail was given; if not personally responsible, then to investigate each individual and ascertain the person's physical or mental propensity for incarceration." Bowles unequivocally stated that he, the sheriff, was in control of the jail. *Id.* at 0009, Bowles Deposition at 24. Regardless of the authority McMillan possessed, as made clear by Bowles's deposition testimony, it was subject to review by the sheriff.

**Memorandum Opinion and Order- Page 17**

Posey's suicide, the County had procedures in place designed to screen and detect pretrial detainees and inmates who were at risk for suicide.  The Dallas County Inmate Suicide Prevention Policy and Procedure requires training of jail personnel in recognition, supervision, documentation and handling of potential suicide inmates.  County App. at 168.  The policy was in effect on the night of Posey's death.  Under the policy, inmates displaying signs or symptoms of suicidal behavior are referred to the jail nurse for assessment and possible referral to mental health specialists.  *Id.* at 167.  Pretrial detainees and inmates suspected of suicidal tendencies are held in areas where they are under constant observation.  *Id.* at 167, 172.

The record before the court indicates that the policy was not adhered to in all respects by jail personnel.  No one can seriously argue this point.  Looking at the evidence in the light most favorable to Plaintiffs, and accepting as true the County's employees' failure to remove the corded telephones after being ordered to do so, and the employees' failure to follow the County's policy regarding screening pretrial detainees for possible suicide, at most the employees acted with negligence and possibly gross negligence.  Whether the conduct is characterized as negligence or gross negligence, it fails to meet the requisite standard of deliberate indifference to establish County liability.  The County cannot be liable when it has a policy in place that addresses the concerns raised by Plaintiffs, but the employees fail to follow the policy, unless the County acted with deliberate indifference; otherwise § 1983 liability becomes nothing more than respondeat superior liability.  *See Bryan County*, 520 U.S. at 415.

Finally, the court addresses the obliquely raised failure to train and supervise issue.  Plaintiffs do not make a specific failure to train or supervise claim in their petition; however, they make a passing reference to a failure to train or supervise claim in their response to the County's motion by

**Memorandum Opinion and Order- Page 18**

contending that "glaring deficiencies in the suicide screening training and implementation of suicide screening procedures in the Dallas County Jail" led to Posey's death. Response at 21. To cover all possible bases, the court addresses this reference. To succeed on a failure to train claim, Plaintiffs must prove: (1) deliberate indifference by the County's policymaker in adopting the training policy; and (2) the County is the "moving force" behind the constitutional violation. *Snyder*, 142 F.3d at 795. Plaintiffs must establish that such failure to train or supervise reflects a deliberate or conscious choice by the County. *See City of Canton*, 489 U.S. at 389.

Plaintiffs contend that there were deficiencies in the County's suicide screening training and procedures.[11] The County points out that it had a suicide prevention policy that required training of jail personnel in recognition, supervision, documentation and handling of potential suicide inmates. County App. at 168. The gravamen of Plaintiffs' complaint is that the County employees failed to follow the County's policies regarding detainees who were at risk for suicide. This cannot be the basis for liability, however, because the court (for reasons previously stated) determined that no deliberate indifference existed.

Plaintiffs fail to offer competent summary judgment evidence that a County policymaker was deliberately indifferent in adopting the training policy that resulted in known or obvious consequences such as Posey's suicide. Further, Plaintiffs fail to offer competent summary judgment evidence that the County's allegedly inadequate training policy was the causal link – "moving force" – behind Posey's suicide. Plaintiffs' expert, Dr. Kiekbusch, contends that the jail personnel were not properly trained to discharge their duties. The possibility that Posey's suicide could have

_____

[11]According to Plaintiffs, these alleged deficiencies were the "failure of training and supervision in the psychological screening procedure [that] led to the known risk of a suicidal inmate eluding detection and being placed in a cell where the risk of suicide by phone cord was unacceptably and irreparably high." Response at 21.

**Memorandum Opinion and Order- Page 19**

been prevented had jail personnel received better or additional training cannot, without more, support liability. *City of Canton,* 489 U.S. at 390-391; *see also Snyder*, 142 F.3d at 798.  Plaintiffs' argument simply misses the mark.  Notwithstanding Dr. Kiekbusch's opinion, the record does not reveal a lack of training or lack of a specific policy addressing pretrial detainees who are at risk for suicide, but reveals, at most, a failure of County jail employees and personnel to adhere to all aspects of the policy in place at the time of Posey's death.  This cannot be a basis for County liability under § 1983.

As a final note on the policy issue, the court compares this case with that of *Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir. 1992).  In *Rhyne*, Paul Morrow, a pretrial detainee, hanged himself on his third attempt after being arrested and placed in jail.  Morrow also had been diagnosed as suicidal by a physician.  The director of the county mental health facility recommended that Morrow be transferred from the county jail to a state hospital "because he was a high suicide risk." Rather than place Morrow in a cell where he could be constantly watched, the jail personnel placed him alone in a cell.  The chief jailer provided Morrow with a blanket.  When Morrow was found, he was hanging from prison bars by a strip of the blanket earlier provided to him. *Id.* at 392-93.  The court concluded that no basis existed to hold the county liable for Morrow's death because of the existence of a policy or custom that violated his constitutional rights.  Although the *Rhyne* court acknowledged negligence on the part of jail staff in its care of Morrow, it concluded that the county did not act with deliberate indifference with respect to Morrow's constitutional rights.

The facts outlined in *Rhyne* reflect a higher degree of fault on the part of the jail staff than that reflected on the part of jail personnel in this case; yet the *Rhyne* court concluded that no basis for county liability existed.  Since the degree of fault here is substantially less than that in *Rhyne*,

the court is foreclosed from making any determination subjecting the County to liability in this case.

In sum, a reasonable jury could not conclude that the County adopted a policy or custom which made it obvious that the constitutional rights of pretrial detainees to medical care and safety would be violated.  For the reasons stated,  Plaintiffs fail to raise a genuine issue of material fact as to the existence of a policy or custom of the County that deprived Posey of a constitutional right. Accordingly, the County is entitled of judgment as a matter of law.

### 3.        Other Constitutional Claims

In addition to deliberate indifference, Plaintiffs also assert that the County violated Posey's constitutional rights of: (1) freedom of expression; (2)  freedom from unlawful arrest and seizure; (3) freedom from the use of excessive force; (4) freedom from deprivation of liberty and life without due process of law; (5) freedom from cruel and unusual punishment or summary punishment; (6) freedom from unequal protection under the laws; and (7) denial of adequate medical care. Petition at 12.  Other than a passing and conclusory reference in their petition, Plaintiffs make no argument and cite no authority, much less present any competent summary judgment evidence, regarding these claims.[12]  As the record is devoid of competent summary judgment evidence that the

_____

[12]To the extent that one could argue that there was evidence to support claims 4, 5 and 7, such argument is foreclosed by the court's determination that no deliberate indifference existed.  Moreover, the court finds it surprising that claims 1, 2, and 3 were not voluntarily dismissed, as no evidence has been presented that Posey was denied the right to freedom of speech or to otherwise express himself, unlawfully arrested or detained, or treated differently from those similarly situated to him.  Whatever Plaintiffs' theory of the case, the evidence shows no violation of the First, Fourth and Fourteenth Amendments to the United States Constitution with respect to these claims.  There is evidence that Posey asked for an attorney, which is presumably why Plaintiffs make a denial of counsel claim under the Sixth Amendment to the Constitution. *See* Plaintiffs' Fourth Amended Original Petition ¶ 20.  Plaintiffs fail to develop this claim.  Posey was arrested and later booked into the Dallas County Jail at approximately 2:30 a.m.  Posey stated that he wanted a lawyer five times at the beginning of the book-in process.  During this time, the jail personnel were completing the book-in process and attempting to obtain Posey's cooperation to accomplish this objective. That Posey's emotional request for an attorney was not immediately addressed by jail personnel is of no moment.  Posey hanged himself sometime prior to 3:49 a.m., and was pronounced dead at 4:23 a.m.  Given the sad turn of events, the jail personnel were not able to address Posey's request for an attorney, and a

County had a policy or custom as to any of the claims alleged, the County is entitled to summary judgment as a matter of law with respect to all of Plaintiffs' federal claims.

###    B.    Plaintiffs' State Law Claims

Plaintiffs also allege claims under state law for negligence by the County and SWBT; and breach of implied warranty, breach of express warranties, strict liability, and misrepresentation by SWBT.  In this case, all federal claims are being dismissed. The court has jurisdiction over the state law claims only through the exercise of its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  The only claims that remain against the County and SWBT are those of negligence and other state law claims, which are typically and routinely handled in the state court.  The strongest consideration here is that state courts are more familiar with, and better equipped to address, the state law claims. No purpose is really served by trying these claims in federal court.  Moreover, the parties agree that the state law claims should be remanded to state court if the federal claims are dismissed.  In any event, § 1367(c)(3) expressly grants a district court the authority to decline to exercise jurisdiction when all federal claims have been dismissed.  *Rhyne,* 973 F.2d at 395. Accordingly, these claims should be tried in state court.  The court therefore exercises its discretion and declines supplemental jurisdiction over the state law claims.  Pursuant to 28 U.S.C. §§ 1441(c) and 1447(c), this case shall be remanded to County Court at Law Number 3, Dallas County, Texas. Accordingly, the court declines to rule on the state law claims against the County and declines to address Defendant Southwestern Bell Telephone, L.P.'s Motion for Summary Judgment.

---

determination that Posey was denied his right to counsel would be unwarranted under these circumstances.

**Memorandum Opinion and Order- Page 22**

### C.      The County's Objections to Plaintiffs' Exhibits

The County filed objections to Plaintiffs' exhibits submitted in response to the County's motion for summary judgment.  Regarding the objections to correspondence to Dallas County from SWBT, these exhibits are offered to support Plaintiffs' contentions regarding their state law claims. In light of its decision to remand the state law claims, the court did not consider them in reaching its decision as to Plaintiffs' federal claims.  These objections, therefore, are **overruled as moot**.

The County also objects to Plaintiffs' experts' affidavits and reports as exhibits, contending that they contain hearsay and statements which are speculative and conclusory. The County, however, fails to identify the specific statements to which it objects.  Although the court agrees that the affidavits and reports contain conclusory statements, conjecture, and impermissible assumptions and inferences, as such the affidavits and reports did not assist the court in disposing of this motion. Under Fed. R. Evid. 702, the person designated as an expert must have testimony that will assist the trier of fact to understand the evidence or to determine a fact in issue.  The designated expert must bring something to the table.  A proffered expert must "bring to the jury more than the lawyers can offer in argument."  *In re Air Crash at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986).  Here, Plaintiffs' experts' reports offer little more than what counsel could argue based on the known facts. Moreover, regardless of how well an expert's report is crafted, it cannot create liability when none exists.  As previously stated in this opinion, what an expert thinks is irrelevant and quite beside the point if the facts do not support liability.  Further, the court reaches the same decision irrespective of its consideration of the exhibits to which the County objects.  The court therefore **overrules as moot** the County's objections to Plaintiffs' experts' reports.

The County's supplemental objections are to exhibits that the County also submitted.  The court does not understand the basis for these objections when the County submitted basically the same exhibits in support of its motion for summary judgment.  The court will not expend scarce judicial resources on what amounts to petty squabbles over exhibits.  As stated above, the court reaches the same decision irrespective of its consideration of these exhibits to which the County objects.  The court therefore **overrules as moot** Defendant Dallas County, Texas' Objections to Plaintiffs' Exhibits in Opposition to Motion for Summary Judgment, filed June 16, 2005; and Defendant Dallas County, Texas' First Supplemental Objections to Plaintiffs' Exhibits in Opposition to Motion for Summary Judgment, filed November 22, 2005.

## IV.   Conclusion

For the reasons herein stated, no genuine issues of material fact exist with respect to Plaintiffs' federal claims that Dallas County deprived Posey of his constitutional rights guaranteed by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and acted with deliberate indifference to Posey's medical needs or safety.  The court **grants** the Motion for Summary Judgment of Defendant Dallas County, Texas as to the federal claims.  The court **declines** to exercise supplemental jurisdiction over Plaintiffs' state law claims against the County and SWBT as presented in their respective motions for summary judgment.  The court **remands** all state  law claims to County Court at  Law Number 3, Dallas, County, Texas for

**Memorandum Opinion and Order- Page 24**

disposition or trial.  The clerk of the court shall effect this remand in accordance with the usual

procedure.

      **It is so ordered** this 24th  day of March, 2006.


                       Sam A. Lindsay
                       United States District Judge